182 So.2d 885

Thomas DEKLE et ux.

v.

George D. VANN, Jr., et ux.

6 Div. 190–A.

Supreme Court of Alabama.

Feb. 10, 1966.

Whitmire, Morton & Coleman, Birmingham, for appellants.

Harris & Esdale, Birmingham, for appellees.

HARWOOD, Justice.

This is an appeal from a final decree of the Circuit Court of Jefferson County in Equity, ordering that the respondents Thomas Dekle and Virginia Dekle "remove that portion of the wall, now existing on the property line between complainants and respondents, which obstructs the natural flow of surface water across or upon complainants' property."

The evidence presented before the chancellor, stripped of embroidering details not essential to this review, tends to show that George D. Vann, Jr., and Edith Vann, the complainants below, and Thomas Dekle and Virginia Dekle, the respondents below, own and live upon adjoining lots in a subdivision known as "Hoover."

The Vann lot lies immediately east of the Dekle lot and is somewhat higher, so that the natural flow of surface water is across the Vann lot and thence across the Dekle lot.

The land in front of the lots and to the rear of the lots slopes toward the two lots. A paved road runs in front of the lots, and along this road a ditch parallels the road on the side on which the lots are located. The Vanns and the Dekles joined together in paving this ditch paralleling the road.

There is also a ditch along the rear of the lots which is unpaved. This ditch diverts some water which would otherwise flow on to the parties lots. These two ditches were constructed by the developer and were in existence when both parties purchased their respective residences.

Both parties have experienced difficulty with water seeping into their respective houses during periods of rainfall.

The natural flow of surface water in this area is across the lot of the Vanns and thence on to the Dekle lot.

The complaint filed below alleges that the respondents-appellants have negligently constructed a concrete wall on the east side of their lot which obstructs the natural flow of surface water and has caused the same to accumulate on the lot of the complainants-appellees causing immediate and irreparable damage to their home and property.

The wall built by the appellants (Dekles) is a solid concrete wall about twelve inches thick, and some 180 feet long. It varies in height from three to four inches to about thirty inches at the low point of the two lots. The wall acts as a dam which prevents the surface water from following its natural course across the Dekle lot. While a small opening is at the base of the wall at the lower point, expert testimony by engineers was to the effect that during periods of heavy rainfall, this opening is insufficient to accommodate a volume of wa-

ter necessary to prevent it backing up on to the Vann lot.

Evidence presented by the Vanns in the hearing below was that on numerous occasions since the construction of the wall, surface water has backed up during periods of heavy rainfall with resulting damage to the Vann's home and property.

The evidence further shows that Hoover is a subdivision some twelve miles south of Birmingham and prior to its development was wooded or agricultural land. At the time of the trial the developers of this subdivision had surveyed streets which for the most part are paved. The surveyed plat also provides a narrow strip between the lots in question for an easement for public utilities and sanitary sewer lines. A garbage collection service is available and a volunteer fire department has been organized to serve the area. Some 205 dwellings have been erected and occupied as residences, and a shopping center has been built. A golf course and country club are included in the plat.

The area is not within any incorporated town or city.

As to the drainage of surface waters, our decisions have adopted different rules as to lands composing city lots and lands which are outside the limits of a city, town, or village.

As to lands outside a municipality, our decisions have adopted the civil law rule, that is the inferior heritage or lower surface is doomed by nature to bear a servitude to the superior in that it must receive the water that falls on and flows from the higher land. This is a natural easement created by law and imposed upon the owner of the lower surface. Hughes v. Anderson, 68 Ala. 280; Crabtree v. Baker, 75 Ala. 91; Hall v. Rising, 141 Ala. 431, 37 So. 586.

However, an exception to the civil law rule prevailing as to rural lands was recognized early in our jurisprudence, (Nininger v. Norwood, 72 Ala. 277), and has been consistently adhered to. This exception to the civil law rule, supra, is that as to city, town, or village lots, the common law or "common enemy" rule should govern. Such rule entitles the owner of urban property to fight off surface water as a common enemy, and in doing so he may build walls, or dams to prevent the water flowing onto his heritage. Nininger v. Norwood, supra; Hall v. Rising, supra; Crabtree v. Baker, supra. As stated in Burson v. Saliba, 270 Ala. 212, 116 So.2d 609:

> "The result of our decisions is that the lower proprietor in an incorporated town or city can build a wall or other obstruction on his property extending to the line between it and higher property and thereby prevent water from passing from the higher property over his property, although that is the only way in which the surface water can pass. *This is so simply because the area happens to be incorporated in a town or city.* Kay-Noojin Development Co. v. Hackett, 253 Ala. 588, 45 So.2d 792; Drummond v. Franck, 252 Ala. 474, 41 So.2d 268; Shanan v. Brown, 179 Ala. 425, 60 So. 891, 43 L.R.A.,N.S., 792; Hall v. Rising, 141 Ala. 431, 37 So. 586." (Emphasis ours.)

Counsel for appellant concedes that the rules established by our decisions are as above set forth, but strenuously urges that an exception should be made as to lots in a subdivision lying outside the corporate limits of a municipality, but so developed as to have the attributes of urban property. As to such development counsel for appellant would have us apply the common law or common enemy rule as now applies to city lots.

This argument is not lacking in attractiveness in some aspects.

On the other hand certainty as to mode of permissible use of property is one of the most desired elements of ownership. If this certitude be destroyed, then one of the cardinal attributes of ownership is de-

stroyed. The value of title to property would thereby be seriously affected.

While our present rules, differentiating the rights of property owners on the basis of whether the property is within or without the corporate limits of a municipality, may be a rough rule of thumb, it does create a workable rule establishing with certainty the rights of adjoining property owners as to the flow of surface waters.

Should this court expound as law the exception contended for by counsel for appellant, we fear the resulting complications. What size should a subdivision or community of houses be to invoke the exception. Would five houses, twenty houses, or fifty houses be sufficient? The owners of lots within a community of houses outside municipal corporate limits could never know with certainty what rights attached to their lots, insofar as surface water is concerned, until these rights were established in court actions.

■ We hold that as to lots outside the corporate limits of a municipality, even though such lots are within a developed subdivision, are governed by the civil law rule as to the flowage of surface waters.

Counsel for appellant also argues that should this court be unwilling to apply the urban or common law (common enemy) rule to lots in subdivisions outside of municipal corporate limits, the trial court erred in its decree "in holding in substance and effect that complainants" (appellees) "had the right to create artificial channels on their lot through which surface water was channeled from their lot onto the lot of respondents" (appellants).

In this regard the evidence tends to show that in a lower portion of appellees' lot, between their driveway and the property line of appellants, surface water had eroded a small ditch three or four inches deep. The area in this lower portion of appellees' lot had become soggy. In this small ditch the appellee Vann testified that without any digging or trenching he had laid a course of

bricks flat on the bottom of the eroded ditch, and on the sides of the ditch he had placed bricks lengthwise at an angle. This brick construction according to Mr. Vann merely served as a catch basin or sump to drain the water from the surrounding higher earth, and did not drain water onto the Dekle yard.

■ While evidence presented by the appellants is to the effect that this brick construction did cause surface water to drain from the Vann lot onto their lot, this conflict was solely within the province of the chancellor to resolve.

Error is also urged as resulting from the action of the lower court in sustaining appellees' objection to the introduction of certain photographs showing damage to appellants' house prior to the building of the wall.

In this connection the record shows the following:

"MR. MORTON: We now offer them in evidence, Judge, to show the extent of the water problem that existed in this neighborhood and as between these two parties.

"MR. SCHOLL: Your Honor, Mr. Dekle's water problem is not an issue in this case. These pictures will not help the court a bit. We object on the grounds set out before.

"THE COURT: I will sustain the objection.

"MR. MORTON: We except and propose to show this is a water problem that occurred in an urban area and that following the flooding of the house in this fashion, the wall was built in order to prevent the water from running across his yard."

■ The material and decisive issue in this litigation was the legality of the erection of the wall by the appellants. Having no legal warrant to build the wall which acted as a dam, the reason or motive for its

**158**

erection was irrelevant to the issue presented. The court did not err in refusing to accept these photographs in evidence.

Appellants also assert that the lower court erred in overruling appellants' demurrer to the complaint as amended. It is counsel's contention that certain allegations of the bill, which are set forth in the grounds of the demurrer, create doubt, speculation, and conjecture as to what extent, if any, said wall may obstruct the alleged natural flow of surface water across the lot of appellees.

In this regard the portions of the bill to which the pertinent grounds of the demurrer were addressed are as follows:

"That Respondents are now constructing a concrete block and cement wall on the east side of their property on the property line between Respondents and Complainants property from the front of the said property line to the rear of said property.

"That said concrete wall is so negligently constructed by Respondents and is placed by them so that it obstructs the natural flow of surface water so that it will accumulate in Complainants front yard, in the playroom, basement and utility room of their home.

"That in the past, surface water flowing naturally across the property of Complainants has been slightly obstructed by silt, branches and leaves and on said occasion said surface water so obstructed has backed up into the Complainants home, basement, playroom and utility room, to a depth of one foot, damaging same severely.

"That Robert G. Norrell, Jr., a registered engineer, (Registration No. 3169) has surveyed personally the drainage problem existing as to the flow of natural surface water across Respondents and Complainants property and has inspected the wall being constructed on the east side of Respondents property line and based upon his experience as a professional engineer and the said examination and survey of the premises, advised that the two four inch pipes now located in said wall will not carry off the surface water flowing across Complainants property, but rather, that each time a moderate or heavy amount of rain falls, the natural flow of surface water will be obstructed and will be caused to back up into the Complainants home, basement, playroom and utility room.

"That the report designated as 'Exhibit A' by Robert G. Norrell, Jr., is attached hereto and incorporated herein and made a part hereof.

"That the diversion of the natural surface water by Respondents in constructing said wall, will cause immediate and irreparable damage to Complainants property and home, basement, playroom and utility room each time a moderate or heavy amount of rain falls."

█ It appears to us that counsel's pertubation over the alleged speculation inherent in the averments of the bill is unfounded. A reading of the averments, supra, leads easily to the conclusion that the injury complained of resulted from the building of the wall. The averment that in the past surface water flowing naturally across the property of the complainants has been slightly obstructed by silt, branches, and leaves, merely emphasizes that the wall, acting as a dam, inevitably and necessarily, would cause the surface water to back up on appellees' lot. No error resulted in the court's action overruling the demurrers to the bill in the aspect urged.

It is our conclusion that the decree of the lower court is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.