Did the trial court err in entering a summary judgment in favor of the defendant/third-party plaintiff American Indemnity Company and against John H. Ufford II, the third-party defendant, on the theory that Ufford, as the lawyer for an injured motorist in regard to the underlying claim against American Indemnity's insured, induced American Indemnity into settlement negotiations by misrepresenting "that no liens existed against [Ufford's client]?"
This issue arises in the context of a legal action brought by Carraway Methodist Medical Center, pursuant to Ala. Code 1975, § 35-11-372, against American Indemnity Company, claiming that American Indemnity, by accepting a release from Ufford's client, had impaired Carraway's hospital lien, which had not been satisfied at the time the release was accepted. American Indemnity, by way of a third-party complaint, sued Ufford, claiming that "if it is liable to Carraway, it is liable because of the misrepresentations [made by Ufford] upon which American Indemnity relied." Ufford also filed a cross-claim against American Indemnity, alleging negligence.
Carraway filed a motion for a summary judgment against American Indemnity in the original action, and American Indemnity filed a motion for a summary judgment against Ufford in its third-party action. The trial court granted both motions and entered summary judgments. Ufford appeals from the denial of his post-judgment motion to alter, amend, or set aside the judgment against him. We reverse and remand.
On August 25, 1990, Joey Johnson and his sister, Jerri Johnson, were injured when their motor vehicle was involved in an accident with a vehicle driven by Sharon Thompson. Thompson's vehicle was insured by American Indemnity Company. The Johnsons were treated at Carraway Methodist Medical Center where they incurred medical bills. Joey Johnson's bills amounted to $9,527.
In January 1991, the Johnsons hired lawyer John H. Ufford II to represent them with regard to the accident. Ufford maintains that he told Joey Johnson at the outset that Johnson was responsible for paying his medical bills at Carraway, but that he would be able to use the insurance money collected from Thompson's insurance carrier to do this.
Carraway sent a bill for Joey Johnson's hospital charges directly to American Indemnity. Ufford ultimately negotiated a settlement and release agreement between American Indemnity and Joey Johnson, and, pursuant to that agreement, American Indemnity issued a check for $25,000, payable to Ufford and Johnson. Ufford deposited the check into his special trust account, paid Johnson $24,000, and kept $1,000 as his attorney fee.
In deposition, Ufford testified as to why he allowed Joey Johnson to obtain the money from the insurance check from American Indemnity. According to Ufford, American Indemnity had incorrectly worded the release document and he, Ufford, had informed American Indemnity that he was returning the release and the proceeds[1] of Joey Johnson's check to American Indemnity for corrections. Ufford went on to say, however, that Joey Johnson was not concerned about *Page 961 
the wording of the release and that Johnson brought an armed and uniformed police officer to Ufford's office to demand that Ufford immediately pay Joey Johnson — and that he did so.
Meanwhile, Carraway had filed a lien against the assets of Joey Johnson, pursuant to Ala. Code 1975, §§ 35-11-370 and -371, because Johnson's bill at Carraway remained unpaid. Carraway sued American Indemnity and Thompson, alleging that American Indemnity, despite receiving Carraway's billing, had settled with, and satisfied the claims of, Joey Johnson without Carraway's consent, thus impairing Carraway's statutory lien against the assets of Joey Johnson, in violation of Ala. Code 1975, § 35-5-372.
American Indemnity and Thompson filed a third-party complaint against Ufford and Joey Johnson, alleging that, as a result of American Indemnity's relying on Ufford's representation that no liens existed against Joey Johnson, it had issued the check to Johnson and Ufford in settlement of Johnson's claim. Therefore, contended American Indemnity and Thompson, Ufford and Johnson should be liable to them for any amounts for which American Indemnity and Thompson might be found liable to Carraway.
Ufford filed a counterclaim against American Indemnity, alleging that American Indemnity had acted negligently in that 1) it knew or should have known of Carraway's lien at the time it issued the check made out to Joey Johnson and Ufford; 2) it did not put Carraway's name on the check as an additional payee; 3) it did not inform Ufford of the lien. Ufford also maintained that, although he knew Carraway had filed a lien against the assets of Jerri Johnson, he had no knowledge of the Carraway lien against Joey Johnson until after he had negotiated the settlement between Joey Johnson and American Indemnity.
Carraway's motion for summary judgment was granted in its original action against Thompson and American Indemnity. American Indemnity then moved for a summary judgment in its third-party action against Ufford and Johnson; and Ufford moved for a summary judgment on his counterclaim against American Indemnity. The court entered a summary judgment for American Indemnity and against Ufford; Ufford appeals.
Ufford's primary argument on appeal is that American Indemnity failed to make out any prima facie case under any cognizable theory of recovery. American Indemnity contends that the trial court had before it a "volume of evidence [from] which to find a prima facie case of misrepresentation." The record that was before the trial court yields no evidence to support American Indemnity's claim of misrepresentation against Ufford; therefore, the summary judgment for American Indemnity was improper.
"The elements of actionable fraud based on a misrepresentation are: (1) a duty to speak the truth; (2) a false representation of a material existing fact made intentionally, recklessly, or innocently; (3) action upon the false representation by the plaintiff; and (4) damages proximately resulting from the false representation. AlfaMutual Insurance Co. v. Northington, 561 So.2d 1041
(Ala. 1990)." Salter v. Alfa Ins. Co., 561 So.2d 1050, 1053
(Ala. 1990).
Ufford owed no duty to American Indemnity. Indeed, as Ufford points out, he was the legal representative of a partyadverse to American Indemnity. Further, Ufford's testimony that he had no knowledge of the existence of the hospital lien against Joey Johnson directly contradicts American Indemnity's contentions (not supported by any evidence) that Ufford falsely represented the state of Joey Johnson's affairs. The record before the trial court provides no basis upon which to enter a summary judgment.
It is interesting to note that American Indemnity, in its brief to this Court, argues its contentions in the context of the trial court as a "finder of fact." In other words, American Indemnity has tried to support its summary judgment with an argument that, in fact, supports a reversal of the summary judgment entered for American Indemnity and a remand for entry of a judgment in favor of Ufford. For example, American Indemnity states: *Page 962 
 "Furthermore, in Baker v. Bennett, 603 So.2d 928
(Ala. 1992), this Court held that the existence of a duty to communicate is a question for the jury, which would be the trial court in the case at bar, and the finder of fact should consider the relationship of the parties, the value of the particular facts suppressed, and the relative knowledge of each party. Baker at 935. . . ."
 "The various issues regarding the necessary proof [are] clear in the record and [were] apparent to the finder of fact, who was the trial judge in this matter. The makeup of the essential elements, particularly Ufford's primary argument regarding no duty to disclose, were clearly within the realm of the fact finder's discretion. Ufford has offered no evidence that the fact finder's determination of fraud was clearly erroneous. . . ."
(Emphasis supplied.)
American Indemnity's insistence that the trial court's summary judgment is supportable because of the trial court's factfinding discretion is misplaced for two reasons: First, it was not within the trial court's prerogative to find facts;
and, second, there is no evidence to support a conclusion of misrepresentation. The last sentence quoted above from American Indemnity's brief assumes that American Indemnity, as the party moving for a summary judgment, has met its burden of presenting a prima facie case. In fact, the only evidence of misrepresentation is that Ufford received the $25,000 check made out to him and his client and that he divided the proceeds between himself and his client, as was earlier stated.
American Indemnity sought to meet the familiar two-pronged test for summary judgment (a prima facie showing 1) that there is no genuine issue of material fact and 2) that the movant is entitled to a judgment as a matter of law (Rule 56(c), A.R.Civ.P.)) by presenting Ufford's affidavit (filed in opposition to the motion), selected portions of Ufford's deposition, selected portions of an American Indemnity employee's deposition, and copies of the settlement draft and the statutory lien filed by Carraway.
We have carefully reviewed all the evidence of record (including those portions of Ufford's deposition that were not before the trial court when it ruled on the motions for summary judgment), but we have not found even a trace of evidence supporting a single element of the misrepresentation claim. In other words, not only did the movant fail to eliminate all issues of material fact, but the movant totally failed to make out a prima facie case as to the requisite elements of its third-party claim against Ufford alleging misrepresentation.
For these reasons, the judgment appealed from is due to be reversed and the cause remanded.
This opinion was prepared by retired Justice RICHARD L. JONES, sitting as a Justice of this Court pursuant to §12-18-10(e), Ala. Code 1975, and it is hereby adopted as that of the Court.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in the result.
[1] Ufford testified that he had deposited the check into his trust account.