On April 22, 1994, Timothy Mooney, M.D., and Craig Landwehr, M.D., sued Henderson and Walton Women's Center-East, Inc.; Medisphere Management, Inc.; and Ronald E. Henderson, M.D., individually and as the president of Henderson and Walton Women's Center-East, Inc. (all collectively referred to hereinafter as HWWCE). Mooney and Landwehr alleged that they had entered into separate one-year contracts of employment with HWWCE on July 1, 1992, and on June 3, 1993; that pursuant to the contracts they had given notice of their intent to terminate their contracts; and that they were forcibly removed from their offices, in violation of their employment contracts. Mooney and Landwehr asserted claims of breach of contract, fraudulent misrepresentation, fraud, defamation, and the tort of outrage.
On June 7, 1994, HWWCE answered, asserting the affirmative defenses of estoppel and waiver. On February 1, 1996, HWWCE filed a motion for summary judgment. On April 2, 1996, Mooney and Landwehr filed a response to HWWCE's motion. Mooney and Landwehr filed a supplemental response on April 5, 1996. On April 9, 1996, the trial court entered a summary judgment in HWWCE's favor on all counts of the complaint.
Mooney and Landwehr appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to §12-2-7, Ala. Code 1975. On appeal, Mooney and Landwehr contend that the trial court erred in entering the summary judgment in HWWCE's favor on their breach of contract, fraud, and tort of outrage claims. *Page 1342 
A summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. The burden is on the movant to show that there exists no genuine issue of material fact; however, once a party moving for a summary judgment makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to rebut the prima facie showing. McClendon v. Mountain Top Indoor Flea Market, Inc.,601 So.2d 957 (Ala. 1992).
On July 1, 1992, and June 3, 1993, Mooney and Landwehr entered into separate written employment contracts with HWWCE, effective from July 1, 1992, through June 30, 1993, and July 1, 1993, through June 30, 1994. The contracts provided, in pertinent part:
 "17. Termination. Employee's employment shall be terminated upon the happening of any of the following events:
 "17.1 Notwithstanding any of the provisions of this Agreement, upon at least ninety (90) days' prior written notice served by either the Employer or the Employee upon the other;
". . . .
 "18. Termination Benefits. Upon any such termination of employment, unless otherwise agreed by the parties in writing, the employee shall be entitled to receive only the compensation, if any, unpaid for services performed prior to the date of termination. The Employee shall not be entitled to additional compensation or own any interest in the accounts receivable, work in progress or other assets of the Employer except as expressly provided in the agreement."
On March 14, 1994, Mooney and Landwehr provided HWWCE with written notice that, pursuant to paragraph 17.1, they were terminating their contracts effective June 11, 1994. On March 17, 1994, HWWCE wrote letters to Mooney and Landwehr stating, "This will advise you that [HWWCE] waives its right to the 90-day notice and your employment is considered to be voluntarily terminated as of the date of this letter." Thereafter, the locks on HWWCE's offices were changed. When Mooney and Landwehr reported to work, they were escorted out of the offices.
 I. Breach of Contract
Mooney and Landwehr argue that HWWCE breached the terms of their employment contracts by terminating the contracts after they had given the required 90-day notice.
Our supreme court has held:
 " 'Whether a contract is ambiguous is a question of law for the trial court to determine. It is the duty of the court to analyze and determine the meaning of a contract when its terms are clear and certain, but when terms of the contract are doubtful of meaning or the language is ambiguous, precontract negotiations and the conduct of the parties may be looked to by the jury as an aid in interpreting the contract.' "
Sealing Equip. Products Co. v. Velarde, 644 So.2d 904, 908
(Ala. 1994) (quoting Underwood v. South Central Bell TelephoneCo., 590 So.2d 170, 175 (Ala. 1991)). A contract is "unambiguous if only one reasonable meaning clearly emerges." Vainrib v.Downey, 565 So.2d 647, 648 (Ala.Civ.App. 1990). "[I]f the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury." McDonald v. U.S. Die Casting Dev. Co., 585 So.2d 853, 855 (Ala. 1991).
The contracts are plain and unambiguous. The contracts terminated upon 90 days' notice by either party. The plain meaning of paragraph 17.1 of the employment contracts is that either party must give the other 90 days' notice of an intent to terminate the contract. On March 14, 1994, Mooney and Landwehr submitted written notice to HWWCE of their intent to terminate their contracts after 90 days. However, HWWCE's March 17, 1994, letters to Mooney and Landwehr notified them that HWWCE considered the contracts terminated as of that date. Therefore, we conclude *Page 1343 
that Mooney and Landwehr presented substantial evidence that HWWCE breached its contractual obligations to give Mooney and Landwehr 90 days' notice before terminating their employment contracts. Accordingly, the trial court erred in entering the summary judgment in favor of HWWCE on Mooney and Landwehr's breach of contract claims.
 II. Fraud
Mooney and Landwehr also argue that HWWCE fraudulently induced them into entering the employment contracts by promising them that they would become partners in HWWCE. Specifically, Mooney and Landwehr argue that HWWCE promised them that they would become partners in the group after they became board certified, and that they found out in 1994 that they could not become partners because HWWCE is a corporation.
Our supreme court has held:
 "In ordinary cases of alleged fraud, the plaintiff must prove that the defendant made a false representation of a material fact and that the plaintiff relied upon the false representation to his detriment. Harmon v. Motors Ins. Corp., 493 So.2d 1370 (Ala. 1986). . . . However, the law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future. In those 'promissory fraud' actions, the plaintiff must prove that, at the time the representation was made, the defendant had an intention not to perform the act promised and had an intention to deceive the plaintiff. Valley Properties, Inc. v. Strahan, 565 So.2d 571
(Ala. 1990); Kennedy Elec. Co. v. Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983); D.H. Holmes Dep't Store v. Feil, 472 So.2d 1001 (Ala. 1985)."
National Security Ins. Co. v. Donaldson, 664 So.2d 871, 876
(Ala. 1995).
Both Mooney and Landwehr testified that during their 1992 and 1993 contract negotiations HWWCE told them that after they were board certified, and depending on their "production numbers," there might be "a buy in" into the group. During the 1994 contract negotiations, HWWCE informed Mooney and Landwehr that they could become corporate shareholders after they became board certified. Mooney and Landwehr testified that they thought that the "buy in" meant a partnership in the group, that becoming shareholders was unacceptable, and that they began looking for other positions. At the time of Mooney and Landwehr's terminations, neither was board certified and, therefore, had not satisfied the condition precedent to a "buy in" into the group.
Based on the foregoing, we conclude that Mooney and Landwehr failed to present substantial evidence that they were offered a "partnership" or that in 1992, 1993, and 1994 HWWCE had intended not to allow them to "buy in" into the group. Therefore, we conclude that HWWCE was entitled to a judgment as a matter of law on Mooney and Landwehr's fraud claim.
 III. Tort of Outrage
Mooney and Landwehr further argue that the trial court erred in entering the summary judgment on their tort of outrage claims.
Our supreme court has held:
 "The tort of outrage requires extreme and outrageous conduct by a person who intentionally or recklessly causes severe emotional distress to another. American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980). The plaintiff must produce sufficient evidence to show that the defendant's conduct is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.' American Road Service Co., 394 So.2d at 365; see also Fitch v. Voit, 624 So.2d 542 (Ala. 1993)."
Wright v. Wright, 654 So.2d 542, 544 (Ala. 1995). Further, our supreme court has cautioned that the tort of outrage does not encompass " 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " American RoadService Co., 394 So.2d 361, 364-65 (Ala. 1980) (citations omitted).
After March 17, 1994, HWWCE's office locks were changed, Mooney and Landwehr were told they could not see patients, *Page 1344 
patients were told that Mooney and Landwehr were not available, and Mooney and Landwehr were forced to remove their office furniture from HWWCE's offices as patients watched.
Based upon our review of the record, we conclude that HWWCE's conduct does not rise to the level of "atrocious and utterly intolerable," but instead amounts to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Therefore, HWWCE was entitled to a judgment as a matter of law on Mooney and Landwehr's tort of outrage claims.
The summary judgment as it relates to Mooney and Landwehr's fraud and tort of outrage claims is due to be affirmed; as it relates to Mooney and Landwehr's breach of contract claims, it is due to be reversed and the cause remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THIGPEN, YATES, and MONROE, JJ., concur.
CRAWLEY, J., concurs specially.