The plaintiff City of Dothan and the defendant Spann Farm Partnership, Ltd., appeal from a summary judgment entered in favor of the defendants Eighty-Four West, Inc., and Quin E. Flowers, Jr., in a declaratory action to construe an easement. We reverse and remand. This cause is before this court pursuant to § 12-2-7, Ala. Code 1975.
The property involved in this appeal is located in the City of Dothan and consists of about 400 acres that once belonged to the Couch Sand Company. This property was later acquired by Quin E. Flowers, Jr. ("Flowers"); his sister, Juleann Flowers Torrence; and her husband, Samuel M. Torrence (the "Torrences"), as tenants-in-common. In 1990, Flowers sued the Torrences for a sale of the 400- acre tract of real estate and a division of the proceeds. That lawsuit was settled, and as part of the settlement agreement Flowers and the Torrences agreed to a division of this land. The division agreement called for Flowers to take ownership of an eastern parcel and for the Torrences to take ownership of a western parcel, each of which consisted of about 200 acres.
As part of the settlement agreement, in May 1991 the Torrences conveyed to Flowers a 100-foot-wide easement across their Spann Farm development. The "extent and purpose of [this] easement is to allow for the drainage of surface water from Flowers's property whereby such surface water will be allowed to follow the natural drainage channel on [the] Torrences' property. . . ."[1] The settlement also called for Flowers to convey to the Torrences a sanitary-sewer easement across a portion of his property. Both the 100-foot surface-water-drainage easement and the sanitary-sewer easement were duly recorded in the Houston County Probate Office. It is undisputed that the parties have had several developmental studies prepared that considered how the land in question might be used in the future, including the possibility that it would be developed as a residential subdivision. It is also undisputed that at least two of these studies, including one conducted just before the parties divided the original 400-acre tract, contemplated the effect surface-water drainage would have on the development of the 400-acre tract. Because these studies are not in the record we are unable to determine what conclusions these studies reached.
Sometime before July 29, 1993, Spann Farm completed development of Spann Farm Subdivision. Flowers began development of his eastern parcel in 1995 by forming Eighty-Four West, Inc. (collectively, Flowers and the corporation will be called the "Flowers Defendants"), and *Page 905 
conveying approximately 107 acres of his 200 acres to it. The 107 acres became known as Grove Park Subdivision. Flowers retained personal ownership of the remaining 93 acres of the eastern parcel and of the drainage easement. The 93-acre parcel lies to the east of Grove Park Subdivision, which lies to the east of Spann Farm Subdivision. The surface-water drainage easement runs from the southwest corner of the Grove Park Subdivision onto Spann Farm Subdivision.
Sometime before April 1997, Flowers submitted a certain plat and plans for Grove Park Subdivision to the City of Dothan Planning Commission. These plans provided for the construction of roads, storm sewers, a water system, and a sewage system. In April 1997, the Planning Commission approved these plans and the Flowers Defendants began construction in Grove Park.
On or about August 20, 1997, Flowers applied for a grading permit to build an earthen dam on the 93-acre parcel that he personally owns, to prevent surface water from the lands owned and occupied by the Sony Magnetic Products plant and an electrical substation owned by the City, adjoining and to the east of Flowers's property, from flowing onto that property and the Grove Park Subdivision and damaging it. Flowers's permit request is not in the record. Although the City acknowledges in its complaint that Flowers has applied for a grading permit, the city engineer avers by affidavit,"I have no recollection of nor can I find any record of a grading permit application having been submitted to the city engineer for approval of construction of said dam. I am familiar with an incomplete design plan depicting a proposed filling and dam concept that was submitted to the Planning Commission."
Also on or about August 20, 1997, the Flowers Defendants submitted an additional plat and plans for Grove Park Subdivision to the Planning Commission.
The nature of the documents that the Flowers Defendants submitted to the Planning Commission is disputed. The Flowers Defendants assert in their brief to this court that they submitted the preliminary plat and plans for Grove Park Subdivision Phases I, II, and III to the Planning Commission in April 1997, and that the City approved these plans. The Flowers Defendants further aver that the second set of documents they filed with the Planning Commission were construction plans "for all phases of the subdivision development." However, Flowers avers in his first affidavit that he submitted "the subdivision plat and plans for Grove Park Subdivision Phase I" to the Planning Commission in April 1997, and that he "applied for approval of the plat and plans for Grove Park Subdivision Phases II and III" after the plans for Phase I were approved. The City's complaint alleges that it approved the "construction plans" for Grove Park Subdivision Phase I in April 1997 and that the Flowers Defendants then submitted a request for approval of "construction plans" for Grove Park Subdivision Phases II and III. The respective plats and plans also were not put into evidence and they are not in the record.
The disposition of the August 20, 1997, plat and plans is also unclear. The City argues in its brief to this court that it had conditioned the approval of the plat and plans "upon Flowers's completion of design of a surface water management system pursuant to local ordinance." The City claims that Flowers refused to design such a system because the May 1991 surface-water-drainage easement does not limit the volume of water that flows through it and, thus, eliminates the need for Flowers to design such a system. The Flowers Defendants argue that they have submitted construction plans to the city engineer for his approval and that the construction plans include a storm-water-management system.
The City did not approve the August 20, 1997, plat, plans, and grading permit. Rather, on August 28, 1997, it filed a complaint for a declaratory judgment, against Eighty-Four West, Inc., and Spann Farm *Page 906 
Partnership, Ltd., seeking clarification as to (1) the volume of surface-water runoff that is allowed to pass through the May 1991 easement across the property owned by Spann Farm, and (2) whether the City was required to grant Flowers's application for a grading permit that would allow Flowers to construct an earthen dam on his 93-acre parcel to prevent surface-water runoff from higher landowners from coming onto and damaging his two parcels of land.
The City alleged that a ruling regarding the volume of surface-water runoff allowed to flow through the May 1991 drainage easement "is necessary for review of the design and approval of the storm water management system for the development of Phases II and III of Grove Park Subdivision."
The City later amended its complaint, requesting a declaration of the parties' respective rights in a 50-foot sewer and utility easement that belonged to the City and that was located in the area where Flowers's earth work was proposed.
Eighty-Four West, Inc., moved to join Flowers as a defendant to this action under Rule 19, Ala.R.Civ.P., and the court granted this motion. The Flowers Defendants answered by raising various legal defenses and by asserting that the May 1991 easement is clear, unambiguous, and not subject to construction. The Flowers Defendants further asserted that the "common enemy" rule of law entitled them to build the earthen retaining wall or dam to prevent surface-water runoff from coming onto and damaging Flowers's 93-acre parcel and the Grove Park property. The Flowers Defendants denied that the proposed dam would unlawfully or unreasonably interfere with the City's 50-foot sewer and utility easement.
No discovery was made. On January 14, 1998, the Flowers Defendants filed a motion for a summary judgment, which they supported by the pleadings, Flowers's first affidavit, and the exhibits thereto. The Flowers Defendants also filed a brief in support of their summary-judgment motion. After he described how the May 1991 easement came into being, Flowers averred that before he and the Torrences divided the original 400-acre tract, they had a developmental study prepared that addressed the possibility that the land would be developed for residential use and that considered the effect that surface-water drainage would have on the land. Flowers further averred that he had applied for a grading permit to construct a retaining wall or dam to prevent water from the Sony plant, Flowers Hospital, and an electrical substation owned by the City and lying to the east from flooding his property and the Grove Park Subdivision property.
Flowers presented no evidence that the water at issue is surface water. Flowers made no attempt to prove, for example, that water normally did not occur in the drainage ditch or that the watercourse that the City defined as a "stream" did not have a source and that it contained water only when it rained.
The City responded to the Flowers Defendants' summary-judgment motion with the affidavit of its city engineer, Gary Martin. Martin supported his affidavit with a photograph of the drainage ditch taken on February 3, 1998, showing water flowing in the drainage ditch; an aerial photograph of the land in question; several topographical maps; and a legal description of the utility and sewer easement referenced in the City's amended complaint. Martin averred in his affidavit that the Grove Park Subdivision development plan proposed by the Flowers Defendants, if constructed, would "result in severe overtaxing of downstream facilities resulting in flood damage to downstream property owners at a greater frequency and with less rainfall than if the design were to meet the storm water runoff control and management requirements established by the city engineer. . . ." Martin did not specify how, or why, the flooding would occur, or even the manner in which the proposed development failed to comply with local ordinances. Other than the *Page 907 
photographs and maps used to support his affidavit, Martin made no attempt to establish that the water in question was an intermittent stream, as the City claimed.
The City amended its complaint, and the Flowers Defendants filed a supplemental brief in which they addressed the "new" controversy, i.e., whether the dam Flowers proposed to construct on the land that he personally owns would interfere with the City's utility and sewer easement near the same property. The Flowers Defendants supported this brief with a second affidavit from Quin E. Flowers, Jr., in which Flowers stated that he was aware of the location of the City's 50-foot sewer and water easement and that there is presently on this easement an earthen retaining wall or dam and pipe placement that Sony built in 1982. Flowers attached several photographs of Sony's earthen dam as exhibits to his affidavit. Flowers further averred that Sony had agreed to remove its retaining wall and pipe placement, thereby permitting Flowers to construct a similar dam. Flowers attached as an exhibit to his affidavit a letter to that effect from the president of Sony Magnetic Products of America to him, dated December 10, 1993. Again, Flowers made no effort to prove that the water at issue was merely surface water.
On March 16, 1998, nearly six months after the City had filed its complaint and six weeks after the Flowers Defendants had filed their motion for a summary judgment, Spann Farm, the owner of the development immediately downstream from the Grove Park development, filed an answer to the City's complaint and amended complaint, in which Spann Farm alleged that no justiciable controversy existed because "no drainage plans existed."
In opposition to the Flowers Defendants' summary-judgment motion, Spann Farms submitted the affidavit of Samuel M. Torrence. Torrence claimed that the May 1991 drainage easement was "created in recognition of the previous studies and recommendations, including the retainage requirements upstream and the existence of the additional lake and the dam thereof downstream from said easement." These studies, of course, are not in the record. Torrence further claimed that the Grove Park plans indicate that all surface water of the subdivision will be diverted to the drainage easement and that "it was never the intention of any party to the [May 1991] easement that [this] easement would be used by the upstream developer to handle surface water for the entire upstream parcel. That is why the easement specifically states that its purpose is to allow the surface `to follow the natural drainage channel.'" Torrence made no attempt to establish that the water was not surface water. Torrence's affidavit was not supported by any exhibits, and it consists of nothing more than Torrence's conclusory allegations. Torrence presented no evidence indicating that the drainage ditch would not be able to handle the surface water runoff or that any flooding will occur if the Grove Park plans are approved. Moreover, there is no record evidence indicating that Torrence was qualified to make such conclusions.
The court held a hearing on the Flowers Defendants' motion for a summary judgment, and on April 10, 1998, the court entered an order granting the Flowers Defendants' motion. In this order, the trial court found the existence of two controversies:
 "The first controversy is the legally permissible volume of surface water drainage allowed by a drainage easement owned by Quin E. Flowers, Jr., and running over land owned by the Torrence Defendants (hereinafter referred to as the May 1991 easement). Inherent in this controversy is the question of whether the City must approve the Flowers Defendants' plans for development (including storm water management plans) of Phases II and III of a subdivision known as Grove Park Subdivision when those plans call for drainage of any and all surface water falling onto *Page 908 
the Grove Park land through this May 1991 surface water drainage easement.
 "The second controversy involved in this case is whether the Flowers Defendants are entitled to build an earthen berm or dam on the boundary of real estate belonging to Quin E. Flowers, Jr., and real estate belonging to or being occupied by Sony Magnetic Products, a nonparty, and a City of Dothan electrical substation. Inherent in this controversy is whether the City must approve a request by Quin E. Flowers, Jr., for a grading permit to construct this earthen berm or dam and whether the construction of this earthen berm or dam will unduly interfere with a prior sewer and utility easement owned by the City and running, at least in part, in the same general area as the proposed construction site for the dam."
The trial court found from the evidence that the clear and unambiguous language of the written drainage easement "does not limit or in any way restrict the permissible volume or speed of the water allowed to drain through the 100 foot easement." In so finding, the trial court noted that when the parties divided the original 400-acre tract, "they considered the effect that the flow of surface water would have on development of the property and planned and executed this written drainage easement to deal with the surface water problem." Finally, the trial court rejected the argument by the City and Spann Farm that the May 1991 drainage easement was insufficient to allow water coming onto or falling onto the land owned by the Flowers Defendants to drain through the land owned by the Torrences or their successors in title, finding that the easement "was intended to, and is sufficient to" permit such drainage.
Having resolved the issue concerning the May 1991 drainage easement in favor of the Flowers Defendants, the trial court ordered the City to grant final approval of the Flowers Defendants' plans for Grove Park Subdivision Phases II and III.
Regarding the issue of the earthen dam and Flowers's request for a grading permit, the trial court found that the water at issue here was surface water, "the flow of which was created and caused by rainfall," and that the "parties all agreed there was no problem until it rained." The trial court further found that Flowers had an absolute right to construct a dam or wall of whatever character on his property to protect the land from oncoming surface water, and ordered the City to grant the permit.
Thereafter, the City and Spann Farm filed motions to alter, amend, or vacate the judgment. The trial court denied these motions.
Before we address the issues raised in this appeal, we must first determine whether justiciable controversies were presented to the trial court.
Section 6-6-221, Ala. Code 1975, provides that the Declaratory Judgment Act "is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations and is to be liberally construed and administered." In Withers v. Mobile Gas Co., 567 So.2d 253 (Ala. 1990), our supreme court implicitly held that a declaratory judgment is a proper method of establishing the rights and status of parties to an easement if the complaint alleges a justiciable controversy. The proper test of the sufficiency of a complaint in a declaratory-judgment proceeding is whether there is a bona fide justiciable controversy. Graddick v. McPhillips, 448 So.2d 333 (Ala. 1984). Declaratory judgment proceedings will not lie for an "anticipated" controversy. Id. However, the parties should not be compelled to wait until the events giving rise to liability have occurred before having a determination of their rights and obligations. Morton v. Allstate Ins.Co., 486 So.2d 1263, 1269 (Ala. 1986). Finally, the remedy of declaratory relief was intended to be alternative and not dependent upon the absence of another *Page 909 
adequate remedy. Ex parte Jim Dandy Co., 286 Ala. 295,235 So.2d 545 (1970).
We find the existence of two controversies: (1) the volume of water allowed to pass through the May 1991 drainage easement;[2] and (2) whether the City was required to give Quin E. Flowers, Jr., a grading permit to construct a retaining wall on the 93-acre parcel that he personally owns. We hold that these issues were properly before the trial court.
On appeal, the City and Spann Farm attempt to frame the issue concerning the May 1991 easement as whether the trial court erred in ruling that the drainage easement "supersedes city and state legislation." We do not agree. Rather, the issue before us is whether the trial court erred in entering a summary judgment in favor of the Flowers Defendants concerning the May 1991 surface-water-drainage easement.
 "On review of a summary judgment, the evidence is to be construed in the manner most favorable to the nonmovant, and all doubts are to be resolved against the movant. Motes v. Matthews, 497 So.2d 1121, 1123 (Ala. 1986). Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: l) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the motion in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the `substantial evidence rule' (§ 12-21-12, Ala. Code 1975), for actions filed on or after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence rule, the party opposing a properly supported summary judgment motion must present `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989). More simply stated, `an issue is genuine if reasonable persons could disagree.' Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481
(1982)."
Franklin v. City of Huntsville, 670 So.2d 848, 849 (Ala. 1995).
 "The initial burden on the party moving for summary judgment is to establish the absence of any issue of material facts. Ray v. Montgomery, 399 So.2d 230 (Ala. 1980). The moving party must anticipate every potential adverse fact and discharge his burden adducing evidence which supports an order granting the motion, thereby plugging every evidentiary hole in his right to a judgment. Ray v. Midfield Park, Inc., 293 Ala. 609, 308 So.2d 686 (1975)."
Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated § 56.5, p. 103 (3d ed. 1996).
Concerning the May 1991 drainage easement, we think the written easement is clear and unambiguous. The trial court was required to construe its terms according to their clear language. Robichaux v. AFBIC Development Co., 551 So.2d 1017 (Ala. 1984); Cobb v. Allen, 460 So.2d 1261 (Ala. 1984). The trial court correctly held that "any and all surface water coming onto or falling onto" the Flowers Defendants' land should be allowed to *Page 910 
drain through this easement onto the property of the Torrences.
The May 1991 easement also is limited by its plain language to the drainage of surface water, as opposed to water from a defined or an intermittent stream. The only evidence presented by the Flowers Defendants is the affidavits submitted by Quin E. Flowers, Jr., and the exhibits attached thereto. Neither the affidavits nor the exhibits contain any evidence tending to prove that the water at issue is surface water. Because the Flowers Defendants did not eliminate all issues of material fact, the trial court erred in entering in their favor a summary judgment regarding the May 1991 easement. Ray v. Montgomery, supra; Ufford v. American Indemnity Co., 631 So.2d 959, 962 (Ala. 1994).
The trial court also erroneously entered a summary judgment in favor of the Flowers Defendants concerning the grading permit and the earthen dam that Quin E. Flowers, Jr., proposed to construct on the 93-acre parcel he personally owns. To be entitled to a summary judgment, the Flowers Defendants had to show that the water to be diverted by the proposed earthen dam is not a stream, but rather is surface water. Drummond v. Franck, 252 Ala. 474,41 So.2d 268 (1949); Winters v. Cain, 279 Ala. 481,187 So.2d 237 (1966); Dekle v. Vann, 279 Ala. 153, 156, 182 So.2d 885,887 (1966); Burson v. Saliba, 270 Ala. 212, 116 So.2d 609 (1960). Because the Flowers Defendants presented no evidence concerning this issue, the trial court erred in entering a summary judgment in their favor.
The Flowers Defendants appear to argue that, because the City used the phrase "surface water" in its pleadings, the City cannot argue that the water is an intermittent stream. The Flowers Defendants cite Holway v. Wanschek, 690 So.2d 429
(Ala.Civ.App. 1997); and Born v. Clark, 662 So.2d 669, 671 (Ala. 1995), in support of their argument. However, the facts of these cases are readily distinguishable from those of the present case. In both Wanschek and Clark, parties had deliberately and intentionally taken positions in pleadings that they later attempted to contradict. The appellate courts reviewing those cases precluded the parties from changing the positions they had previously taken. In the present case, however, the City's use of the phrase "surface water" is almost accidental. It is the result of unartful pleading. Indeed, in its trial brief in opposition to the Flowers Defendants' motion for a summary judgment, the City argued that the drainage course is a naturally occurring water course, and thereby implicates riparian rights, as opposed to unchanneled surface water. Because we do not believe that the City's use of the phrase "surface water" is "substantial evidence" that the water to be diverted by Flowers's earthen dam was surface water, the trial court's judgment concerning this issue must also be reversed.
For the foregoing reasons, the trial court improperly entered the summary judgment in favor of the Flowers Defendants. The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10
(e), Ala. Code 1975.
REVERSED AND REMANDED.
Robertson, P.J., and Yates and Crawley, JJ., concur.
Monroe and Thompson, JJ., concur in the result.
[1] The May 1991 surface-water-drainage easement is not included in the record of this case. However, the City of Dothan alleged the existence and purpose of this easement in its complaint, and Spann Farm and Flowers admitted the existence of the easement. A fact admitted in the pleadings need not be proven by another party. See Kennamore v. State, 686 So.2d 295, 296 (Ala.Civ.App. 1996). Moreover, the agreement as to division of certain real property, which is included in the record, states the terms and purpose of the easement.
[2] The City asserts that the controversy in this case is whether the proposed Grove Park Subdivision development "must include storm water management." The plans for this development are not in the record evidence and the issue whether the plans provide an adequate storm-water management system is not before us. *Page 911