BoWing Office Systems, Inc., formerly doing business as Jay Johnson Business Products, Inc. (hereinafter "BoWing"), appeals from a summary judgment entered in favor of James C. Johnson, Sr., in a declaratory action to construe a lease. We reverse and remand.
In January 1994, the parties entered into an agreement, in which BoWing agreed to lease from Johnson an office building located on South Court Street in Montgomery. The lease was for a term of three years, beginning June 1, 1994, and ending May 31, 1997, at the rate of $2,000 per month. The lease contained an option to renew, which read as follows:
 "10. Should the Tenant intend to surrender the premises at the expiration of the given term, the Tenant shall notify the Landlord at least ninety (90) days prior to the expiration date. So long as the Tenant shall not be in default, at the termination of the initial three-year term of this lease, the tenant may, at least ninety (90) days prior to the expiration of this lease, notify the Landlord in writing of his desire to exercise an extension of this lease term, up to two (2) additional years. During any said extension and option hereunder, all terms and conditions of this lease shall remain in full force and effect, provided, however, the tenant's obligation to pay rent during the extended option period shall be One Thousand Dollars ($1,000.00) per month, and the Tenant shall pay all taxes and assessments, ordinary and extraordinary, general and specific, which may be levied or assessed on the premises."
In the early months of 1996, the parties exchanged letters, in which they discussed BoWing's possible purchase of the leased premises. In these letters BoWing frequently referred to the renewal option of the lease. In a letter to Johnson dated January 15, 1996, Robert J. Wingenfield, BoWing's president, noted that "[a]s currently structured, my lease agreement calls for an additional 15 months at $2,000 per month followed by a 24-month period, at my option[,] which I plan to exercise, for $1,000 per month." In a letter to Johnson dated January 31, 1996, Wingenfield stated that "[l]ooking at it from my perspective, in 15 months my lease agreement . . . drops to $1,000 per month for the following 24 months." Finally, in a letter dated April 12, 1996, Wingenfield stated that his "reduction in rent scheduled for June 1997 will bring [the rental payments] more in line with the true worth of [the South Court Street] facility."
At this point, the record becomes rather confusing. The parties were unable to agree on the value of the leased premises, and no further communications took place regarding the lease agreement for almost one year. On March 6, 1997, which was 86 days before the lease was to expire, Johnson sent Wingenfield a letter, in which Johnson appeared to indicate that Wingenfield could still renew the lease at the rate of $1,000 per month. This letter stated, in pertinent part:
 "According to Paragraph 10 of your lease agreement, you are supposed to *Page 917 
give me a 90-day notice prior to the expiration of the three-year portion of the agreement if you intend to vacate the building/property.
 "You also have the right to exercise an option to continue the lease for another two-year term by giving me a 90-day notice. I have not heard from you concerning the lease agreement and would like to know your plans regarding this agreement. . . ."
(Emphasis added.)
On March 13, 1997, Wingenfield notified Johnson that he "would like to exercise [the renewal] option on a month-to-month basis." However, in a letter dated March 14, 1997, Johnson advised Wingenfield as follows:
 "This will acknowledge our conversation this date regarding your desire to relocate at the end of your current lease . . . and then continue on a month-to-month basis until you find a suitable place. This is okay with me at the current [rate of] $2,000 per month and just give me a 90-day notice."
In a letter dated May 29, 1997, Wingenfield informed Johnson that he was extending the current lease "for up to two years at six-month time periods for $1,000 per month as the present agreement allows." Shortly thereafter, Wingenfield sent Johnson a check in the amount of $1,000 for the June 1997 rent. Johnson returned the check to Wingenfield, together with a statement for $2,000 and a $100 late charge. Wingenfield subsequently mailed the check back to Johnson.
The dispute concerning the construction of the renewal provision continued through the remainder of 1997, and BoWing continued to occupy the premises after the lease appeared to have expired on May 31, 1997. Despite the disagreement regarding the renewal option, the parties resumed their negotiations concerning BoWing's possible purchase of Johnson's building. However, these negotiations broke down, and in January 1998 Johnson filed a complaint for a declaratory judgment against BoWing, seeking a determination of the relative rights and liabilities of the parties under the January 1994 lease agreement. Specifically, Johnson asked the trial court for a determination (1) that BoWing had failed to give him proper or timely notice of its intention to exercise its renewal option; and (2) that as a holdover tenant, BoWing was bound to the same three-year term as in the original lease, at the same rental rate of $2,000 per month. BoWing answered by asserting numerous affirmative defenses and by alleging that it had renewed the lease, either on a month-to-month basis or, in the alternative, for an additional two years.
In April 1998, Johnson filed a motion for a summary judgment, supported with the pleadings and numerous exhibits. BoWing also filed a motion for a summary judgment, supported by the affidavit of Wingenfield and the exhibits thereto. Both parties filed briefs in support of their summary-judgment motions. After hearing the arguments of counsel, the trial court granted Johnson's motion and entered a summary judgment in his favor. BoWing argues that the trial court erred to reversal in entering a summary judgment in favor of Johnson because, it contends, Paragraph 10 of the lease agreement is ambiguous and because, it further contends, BoWing gave Johnson timely notice. BoWing further argues that, even if the lease agreement is clear and unambiguous, the trial court erred in granting Johnson's summary-judgment motion because Johnson had waived the notice requirement.
 "On review of a summary judgment, the evidence is to be construed in the manner most favorable to the nonmovant, and all doubts are to be resolved against the movant. Motes v. Matthews, 497 So.2d 1121, 1123 (Ala. 1986). Rule 56, A. R. Civ. P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a *Page 918 
judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the motion in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541
(Ala. 1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the `substantial evidence rule' (§ 12-21-12, Ala. Code 1975), for actions filed on or after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence rule, the party opposing a properly supported summary judgment motion must present `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989). More simply stated, `an issue is genuine if reasonable persons could disagree.' Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1982)."
Franklin v. City of Huntsville, 670 So.2d 848, 849 (Ala. 1995).
To be entitled to a summary judgment, of course, the moving party must eliminate all issues of material fact. Ufford v. American Indem. Co.,631 So.2d 959, 962 (Ala. 1994). No presumption of correctness attaches to the decision of the trial court when it rules on a summary-judgment motion, and our review is de novo. Gossett v. Twin County Cable T.V., Inc.,594 So.2d 635 (Ala. 1992).
It is well settled under Alabama law that the words of a contract are to be given their ordinary meaning and that the intention of the parties is to be derived, if possible, from the provisions of the contract itself.Food Service Distribs., Inc. v. Barber, 429 So.2d 1025, 1028 (Ala. 1983) (citing Sisco v. Empiregas, Inc. of Belle Mina, 286 Ala. 72, 237 So.2d 463
(1970)). Where a contract, by its terms, is plain and free from ambiguity, there is no room for construction and the contract must be enforced as written. Ex parte Conference America, Inc., 713 So.2d 953, 956 (Ala. 1998);Ex parte South Carolina Ins. Co., 683 So.2d 987, 989 (Ala. 1996). However, "[w]hen any aspect of a contract is capable of more than one meaning, it is ambiguous." Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948
(Ala. 1997). See also Curry v. Curry, 716 So.2d 707 (Ala.Civ.App. 1998). Whether a contract is ambiguous is a question of law for the trial court, and the court's ruling on that question carries no presumption of correctness on appeal. General Aviation, Inc. v. Aerial Services, Inc.,700 So.2d 1385 (Ala.Civ.App. 1997). When the terms of a contract are ambiguous in any respect, the true meaning of the contract becomes a question for the fact-finder. Mooney v. Henderson Walton Women'sCenter-East, Inc., 684 So.2d 1340 (Ala.Civ.App. 1996). "If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity."Voyager Life Ins. Co., 703 So.2d at 948.
"The law is clear that a lease period may be extended by the actions of the parties. See Lott v. Douglas Oil Purchasing Co., 501 So.2d 1195
(Ala. 1986); Reynolds v. Bryant, 281 Ala. 372, 202 So.2d 734 (1967)."Lioce v. Larue, 562 So.2d 521, 522 (Ala.Civ.App. 1990). "It is a rule of long standing that the courts will construe doubtful terms in a contract more strongly against the party who framed or prepared them, and when the instrument is capable of two constructions, it should receive that which is most unfavorable to the maker." Alabama-Tennessee Natural Gas Co. v.City of Huntsville, 275 Ala. 184, 193, 153 So.2d 619, 628 (1963). See alsoBritt v. Gonzalez, 710 So.2d 928 (Ala.Civ.App. 1998). *Page 919 
Paragraph 10 of the lease agreement is ambiguous and confusing and is susceptible to more than one interpretation. Therefore, the trial court should not have entered a summary judgment in Johnson's favor. Paragraph 10 mandates that the tenant "shall," at least 90 days prior to the expiration of the contract, notify the landlord of its intent to surrender the premises; that the tenant "shall" pay all taxes assessed on the premises; and that, with the exception of the rental rate, all terms and conditions of the lease "shall" remain in full force and effect should the tenant exercise the option. However, this paragraph states that the tenant "may" extend the lease by giving written notice of its intent at least 90 days prior to the expiration of the three-year term of the lease. The inclusion of the word "may" in this paragraph suggests that BoWing could exercise its renewal option by giving a 90-day-notice, but that such notice was not mandatory. Because a factual question exists as to construction of the renewal provision, the trial court should not have entered a summary judgment.
A question of fact also exists as to whether Johnson's March 6, 1997, letter to Wingenfield constitutes a waiver of any 90-day-notice provision that may have existed under this lease. Although this letter is dated 86 days before the lease was due to expire, it appears to invite BoWing to exercise the renewal option.
Finally, we find no merit in BoWing's claim that in 1996 it gave Johnson sufficient notice to constitute an exercise of the option to renew the lease. Wingenfield's 1996 letters to Johnson merely indicated BoWing's intent to exercise its option in the future. The letters, without more, are not sufficient to constitute an exercise of the option. See generally,Jenkins v. Thrift, 469 So.2d 1278 (Ala. 1985).
The judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
Robertson, P.J., and Monroe and Crawley, JJ., concur.
Yates and Thompson, JJ., concur in the result.