Rel: October 24, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

———————————————

### SC-2025-0105

———————————————

## City of Birmingham

### v.

## Mark Pettway, in his official capacity as Sheriff of Jefferson County, and the Jefferson County Commission

### Appeal from Jefferson Circuit Court
### (CV-24-900475)

LEWIS, Justice.

The City of Birmingham ("the City") appeals from a judgment on the pleadings entered by the Jefferson Circuit Court ("the trial court") in favor of Mark Pettway, in his official capacity as Sheriff of Jefferson County. We affirm the trial court's judgment.

Procedural History

On February 2, 2024, the City filed a complaint for a declaratory judgment against Pettway, in his official capacity as Sheriff of Jefferson County. The complaint states that Pettway is

> "required by Ala. Code (1975) § 14-6-1, 14-6-5, § 12-11-3, § 12-12-32, § 12-14-1, and other Alabama laws and Rules of Court, to accept into custody at the Jefferson County Jail individuals arrested by Birmingham Police officers within the police jurisdiction of the City for both on-sight violations of state law and those arrested for misdemeanor offenses under state law."

The complaint includes the following assertions of fact:

> "5. In October of 2023 various individuals were arrested by Birmingham Police Officers for on-sight violations[] of State law, including misdemeanor and felony offenses, within the police jurisdiction of the City.
>
> "6. Many of the misdemeanor arrestees were transported following their arrest to the Jefferson County Jail …. Pursuant to Ala. Code (1975) § 14-6-1 Sheriff Pettway, being the duly elected Sheriff of Jefferson County, has 'legal custody and charge' of the Jefferson County Jail and 'all prisoners committed thereto.'

2

"7. Upon arrival at the Jefferson County Jail, Birmingham Police Officers were informed that Sheriff Pettway had a standing policy that Jefferson County Jail personnel were not authorized to accept individuals who had been arrested without a warrant issued by a Jefferson County Magistrate.

"8. Randall L. Woodfin, Mayor of the City, and Scott Thurmond, Chief of the Birmingham Police Department, contacted Sheriff Pettway shortly thereafter and held a conference call to discuss said policy. During the conference call, Sheriff Pettway confirmed that it was his policy to refuse to accept into his custody at the Jefferson County Jail prisoners transported thereto as the result of a warrantless arrest, even in those instances when the offense was committed in the presence of Birmingham Police Officers. Sheriff Pettway also refused to accept into his custody at the Jefferson County Jail prisoners arrested by Birmingham Police Officers within the police jurisdiction of the City for misdemeanor offenses under state law.

"9. These conversations continued into November and December of 2023, at which time Sheriff Pettway relented, changing his position and acknowledging that he was required to receive into custody at the Jefferson County Jail those individuals committed for on-sight violations of state law. As a result, on December 19, 2023, the City and Sheriff Pettway executed a Memorandum of Understanding ('MOU') outlining the expectations of each party, the responsibilities of each party, and the process by which prisoners would be committed to the Jefferson County Jail (attached hereto as Exhibit A). The December 19th MOU was to become effective as of January 1, 2024. Pursuant to the MOU, on January 1, 2024, the City began transporting on-sight arrestees to the

3

Jefferson County Jail and Sheriff Pettway properly accepted them as County inmates.

"10. This process continued unabated until approximately January 10, 2024, at which time Chief Thurmond was contacted by Sheriff Pettway and told that he must cease accepting arrestees transported by the City to the Jefferson County Jail. The reason provided was that the Jefferson County Sheriff's Office was, and apparently had been for some time, entering warrants brought by the Birmingham Police Department under the Sheriff's Office Originating Agency Identifier ('ORI'), contrary to state and federal rules and regulations. An ORI is required by the Federal Bureau of Investigation for, inter alia, government agencies to enter records into the National Crime Information Center ('NCIC') and access Criminal Justice Information ('CJI'). Adherence to this and other requirements is required and overseen by [the Alabama Law Enforcement Agency ('ALEA')].

"11. The parties complied with ALEA's mandate, ceasing the transportation of arrestees to the Jefferson County Jail. The parties also learned at that time that to ameliorate the situation, they simply needed to complete and sign ALEA Form 072, a one-page document titled 'NCIC Holder Of The Record Agreement.' The City immediately communicated its willingness to sign Form 072 and forward it to ALEA once fully executed and waited on a response from Sheriff Pettway. As of the filing of this Complaint, three (3) weeks after receiving ALEA Form 072, Sheriff Pettway has not responded and has refused to sign ALEA Form 072.

"12. Sheriff Pettway must 'receive into his custody all persons who have been arrested and lawfully committed into his charge ...' Ala. Op. Atty. Gen. No. 88-00348. Pursuant to

4

Ala. Code (1975) § 12-14-1, the Jefferson County District Court has jurisdiction over misdemeanor offenses under state law committed within the police jurisdiction of the City. Venue is proper in the county where a violation of state law occurs. Ala. Code (1975) § 15-2-2. Furthermore, under state law, '[a]ny jailer or other officer who willfully refuses to receive into his custody any person lawfully committed thereto on any criminal charge or conviction must, on conviction, be fined not more than $500.00.' Ala. Code (1975) § 14-6-5. At this time, Sheriff Pettway's failure to respond to and sign ALEA Form 072 is indicative of a willful refusal to accept individuals at the Jefferson County Jail whom he is required by state law to receive."

(Footnote and emphasis omitted.) The City requested the following relief:

"a). That this Honorable Court declare and define the legal responsibilities of the parties when individuals arrested by Birmingham Police Officers within the police jurisdiction of the City for both on-sight violations of state law and those arrested for misdemeanor offenses under state law are transferred to the custody of Sheriff Pettway at the Jefferson County Jail.

"b). That this Honorable Court declare that individuals arrested by Birmingham Police Officers within the police jurisdiction of the City for both on-sight violations of state law and those arrested for misdemeanor offenses under state law are lawfully committed into his charge.

"c). That this Honorable Court declare that Sheriff Pettway must immediately sign ALEA Form 072 and meet any other requirements of ALEA and or other state agencies relating to the acceptance of arrestees by him into the Jefferson County Jail.

5

"d). That this Honorable Court grant such other relief to which the City of Birmingham is entitled."

Pettway filed an answer to the complaint on March 11, 2024. The Jefferson County Commission ("the JCC") filed a motion to intervene on March 13, 2024. The JCC asserted that it held "a sufficient, financial interest to support intervention under Rule 24(a)[, Ala. R. Civ. P.,] because it is generally responsible for paying for the feeding, clothing, and housing of the inmates housed at the Jefferson County Jails." After a hearing, the trial court granted the JCC's motion on May 16, 2024.

On May 17, 2024, Pettway filed a motion for a judgment on the pleadings pursuant to Rule 12(c), Ala. R. Civ. P. See Pontius v. State Farm Mut. Auto. Ins. Co., 915 So. 2d 557, 562 (Ala. 2005) ("[A] defense of failure to state a claim upon which relief can be granted, although typically raised pursuant to Rule 12(b)(6), [Ala. R. Civ. P.,] can be raised after an answer has been filed by moving for a judgment on the pleadings."). In his motion, Pettway argued that the City's complaint was moot; that it failed to state a claim for which relief could be granted because, he said, it sought an advisory opinion from the trial court; that the law upon which the City relied did not support its requested relief; and that the suit was barred by sovereign immunity.

6

The JCC filed an answer to the City's complaint and a counterclaim against the City on June 14, 2024. The JCC's counterclaim sought a declaratory judgment

"determining and declaring that the City's improper policy of charging persons arrested by City of Birmingham police officers for misdemeanor offenses committed inside the police jurisdiction of Birmingham with 'State law' violations, as opposed to identical 'municipal code' violations, in an effort to shift both the custody of such arrestees to the Jefferson County Jails, and the cost of housing such arrestees to the [JCC], and by extension, the taxpayers of Jefferson County, is a sham, is contrary to law, and is due to be prohibited."

The City filed a response in opposition to Pettway's motion for a judgment on the pleadings. Pettway filed a reply brief in support of his motion. The City thereafter filed a reply to the JCC's counterclaim.

On September 30, 2024, the trial court entered a judgment on the pleadings, dismissing the City's complaint for lack of subject-matter jurisdiction, specifically stating that the complaint failed to present a justiciable controversy because the action was moot and constituted a request for an advisory opinion. The trial court also dismissed the JCC's counterclaim. On October 25, 2024, the City filed a motion to alter, amend, or vacate the judgment on the pleadings; that motion was denied by operation of law on January 23, 2025. See Rule 59.1, Ala. R. Civ. P.

7

The City filed its notice of appeal on February 7, 2025. The JCC did not appeal.

### Standard of Review

"When a motion for judgment on the pleadings is made by a party, 'the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.' B.K.W. Enters., Inc. v. Tractor & Equip. Co., 603 So. 2d 989, 991 (Ala. 1992). See also Deaton, Inc. v. Monroe, 762 So. 2d 840 (Ala. 2000). A judgment on the pleadings is subject to a de novo review. Harden v. Ritter, 710 So. 2d 1254, 1255 (Ala. Civ. App. 1997). A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in the light most favorable to the nonmoving party. Id. at 1255-56."

Universal Underwriters Ins. Co. v. Thompson, 776 So. 2d 81, 82 (Ala. 2000).

### Discussion

On appeal, the City first argues that the trial court erred in dismissing the City's complaint for lack of subject-matter jurisdiction. As noted previously, the trial court held that the complaint failed to present a justiciable controversy because the action was moot and constituted a request for an advisory opinion.

With respect to the mootness inquiry, the trial court held that the Memorandum of Understanding ("MOU") between the City and Pettway was the sole basis for the City's claim that Pettway was obligated to accept the City's arrestees into the county jail and that, because the MOU terminated on April 12, 2024, the City's action was moot. However, it is clear from the allegations in the City's complaint that the City asserted that Pettway is obligated to accept the City's arrestees and to execute any necessary forms required to allow him to accept those arrestees (i.e., ALEA Form 072) not by virtue of the MOU, but pursuant to state law. The complaint states: "Pettway's failure to respond to and sign ALEA Form 072 is indicative of a willful refusal to accept individuals at the Jefferson County Jail whom <u>he is required by state law to receive</u>." (Emphasis added.) Therefore, the City's request for a declaratory judgment hinges on allegations that Pettway has violated Alabama statutes; the complaint does not seek merely to enforce the since-terminated MOU. The complaint highlights the existence of the MOU (and incorporates it into the complaint) to provide context for the City's claims, but the MOU is not the underlying basis of the City's assertion that Pettway is required to accept its arrestees. At the hearing on the

9

motion for a judgment on the pleadings, counsel for the City confirmed the nature of its allegations on this point. Therefore, the termination of the MOU does not render the City's action moot.

Turning to the trial court's finding that the complaint seeks an advisory opinion, we note that the trial court's stated basis for that finding was that the claim for a declaratory judgment was based on the MOU and was, therefore, moot. Because, as we determined above, the complaint is not based on the MOU, the trial court's reasoning on this point fails.

Pettway asserts an additional argument in support of the trial court's finding that the complaint seeks an advisory opinion, specifically, that the City's complaint lacks specific factual allegations showing that, after the termination of the MOU, "the City or [the Birmingham Police Department] ever tried to take any arrestees charged with a state law violation to the Jefferson County Jail and were refused" by Pettway. Pettway relies on Ex parte Marshall, 323 So. 3d 1188 (Ala. 2020) (holding that a declaratory-judgment action was unripe and sought an advisory opinion because it lacked factual context and forced the trial court to make assumptions or predictions), and Surles v. City of Ashville, 68 So.

3d 89, 94 (Ala. 2011) ("In the instant action, there exists only an anticipated controversy; there has been no damage or injury to the parties, nor have any legal rights been thwarted or affected. Thus, the City's action seeks only advice -- not the resolution of a yet realized controversy.").

This Court has stated that

"one of the purposes of the Declaratory Judgment Act is to render practical help in ending a controversy that has <u>yet to reach the stage where legal relief is immediately available</u> and to enable parties between whom an actual controversy exists or those between whom litigation is <u>inevitable</u> to have the issues speedily determined when a speedy determination would prevent unnecessary injury caused by the delay of ordinary judicial proceedings. <u>Ex parte State ex rel. Lawson,</u> 241 Ala. 304, 307, 2 So. 2d 765, 767 (1941). Stated another way, declaratory-judgment actions are designed to set controversies to rest before they lead to repudiation of obligations, invasion of rights, and the commission of wrongs. <u>Id.</u> See also <u>Berman v. Wreck-A-Pair Bldg. Co.,</u> 234 Ala. 293, 175 So. 269, 274 (1937). A declaratory-judgment action requires only that there be a bona fide justiciable controversy. <u>Creola Land Dev., Inc. [v. Bentbrooke Hous., L.L.C.],</u> 828 So. 2d [285,] 288 [(Ala. 2002)] (citing <u>Gulf South Conference v. Boyd,</u> 369 So. 2d 553, 557 (Ala.1979)).

"'A controversy is justiciable where present "legal rights are thwarted or affected [so as] to warrant proceedings under the Declaratory Judgment statutes."' <u>Creola Land Dev., Inc.,</u> 828 So. 2d at 288 (quoting <u>Town of Warrior v. Blaylock,</u> 275 Ala. 113, 114, 152 So. 2d 661, 662 (1963)). We have recognized

11

that a justiciable controversy is one that is '"definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a [judgment]."' MacKenzie v. First Alabama Bank, 598 So. 2d 1367, 1370 (Ala. 1992) (quoting Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So. 2d 385, 387 (1969)).

"A declaratory-judgment action will not lie for an anticipatory claim. Creola Land Dev., Inc., 828 So. 2d at 288 (citing City of Dothan v. Eighty-Four West, Inc., 738 So. 2d 903, 908 (Ala. Civ. App. 1999)). However, we have also held that a party should not be forced to wait until the event giving rise to the claim occurs before a court may determine the party's rights and obligations. Creola Land Dev., Inc., 828 So. 2d at 288 (citing City of Dothan, supra; Morton v. Allstate Ins. Co., 486 So. 2d 1263, 1269 (Ala. 1986)).

Harper v. Brown, Stagner, Richardson, Inc., 873 So. 2d 220, 224 (Ala. 2003). In Harper, this Court determined that a declaratory-judgment action presented a justiciable controversy because, considering the factual background of that case, litigation between the plaintiff and the defendant on the question presented in the declaratory-judgment action was "inevitable." Id. at 225.

In the trial court, the City argued in response to Pettway's mootness argument that, "as … Pettway has, and continues to, refused to accept arrestees charged with misdemeanor violations of State law into his custody at the Jail, the dispute between him and the City is doomed to

12

repeat itself." The City argues again in its reply brief before this Court that "Pettway was and is refusing to accept certain [Birmingham Police Department ('BPD')] arrestees into the county jail. Pettway continues to deny that certain … BPD[] arrestees may be housed in the county jail, and, therefore, there is a justiciable controversy existing between the parties." The City's reply brief, p. 11. We agree with the City. As was the case in Harper, here, the City is not merely seeking an advisory opinion. See Harper, 873 So. 2d at 225. From the factual background of this case, as discussed below, it appears that litigation was inevitable between these parties concerning the issues raised in the complaint.

According to the City's complaint,[1] in October 2023, the City arrested various individuals for on-sight violations of state law. The City transported "many" of the individuals that had been arrested for misdemeanor offenses to the county jail. At that time, the City learned that Pettway had a "standing policy" against accepting any of the City's arrestees without a valid state-law warrant issued by a magistrate (i.e.

---

[1]"A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in the light most favorable to the nonmoving party." Universal Underwriters Ins. Co. v. Thompson, 776 So. 2d 81, 82 (Ala. 2000).

on-sight arrestees). The complaint states: "Pettway <u>also</u> refused to accept into his custody at the Jefferson County Jail prisoners arrested by Birmingham Police Officers within the police jurisdiction of the City for misdemeanor offenses under state law." (Emphasis added.)

In December 2023, the complaint states, Pettway "relented, … acknowledging that he was required to receive into custody at the Jefferson County Jail those individuals committed for on-sight violations of state law," and the City and Pettway entered into the MOU reflecting that understanding. The MOU required Pettway to accept into the county jail those arrestees

"(i) who the City has arrested with probable [cause] and taken into custody for misdemeanors upon which the City's Police Department is the arresting agency and who are awaiting hearing or trial of any such alleged violations (the 'Misdemeanor Offenders'), (ii) awaiting arraignment and/or a warrant from a magistrate or otherwise lawfully detained pursuant to the legal authority vested in the City subject to a forty-eight (48) [hour] hold at the [Jefferson County Sheriff's Office] Jails ('Felony Hold Offenders')."

The MOU further stated that

"Misdemeanor Offenders (to the extent they cannot bond out) and Felony Hold Offenders shall be segregated from other inmates and housed in their own block of the Jails during the forty-eight (48) hour hold until the time that the City provides [Jefferson County Sheriff's Office] with all necessary paperwork and/or warrants, as set forth in detail

14

herein, at which time, these Inmates shall be segregated by gender and shall be housed in accordance with [Jefferson County Sheriff's Office's] housing classification."

Finally, the MOU specified:

"The City shall be responsible for obtaining all necessary warrants and related paperwork thereto regarding the City's Inmates within forty-eight (48) hours of the initial transport of the City's Inmates to the Jefferson County Jails. [The Jefferson County Sheriff's Office] shall not be responsible for holding the City's Inmates longer than forty-eight (48) hours if the City fails to obtain all necessary paperwork and/or warrants within this forty-eight (48) hour timeframe."

The City and Pettway followed the terms of the MOU from its effective date on January 1, 2024, through January 10, 2024, at which time Pettway contacted the Chief of the Birmingham Police Department ("the BPD") and told him that Pettway "must cease accepting arrestees transported by the City to the Jefferson County Jail." The City then learned that Pettway was refusing to accept any more of the City's arrestees because the county's practice up until that point had been to enter the warrants brought by the City into the National Crime Information Center database using the county's "Originating Agency Identifier" and to the access Criminal Justice Information database with that identifier, but that practice was unlawful. The City also learned

15

that, to cure the unlawfulness, the parties were merely required to complete ALEA Form 072 (an "NCIC Holder of the Record Agreement"). Although the City offered to execute ALEA Form 072, Pettway refused to sign the form. The MOU terminated according to its terms soon after the City filed its complaint.

Although the complaint does not specifically allege an instance since January 10, 2024, in which the City attempted to transport an arrestee to the county jail and was refused by Pettway, the complaint presents a justiciable controversy as to whether Pettway is required to accept the City's arrestees without a warrant because, according to the factual background laid out in the complaint, litigation between these parties on this issue was inevitable by the time the complaint was filed. See Harper, 873 So. 2d at 224 ("A declaratory-judgment action requires only that there be a bona fide justiciable controversy."). Specifically, we must take as true the allegations in the complaint that Pettway had a "standing policy" of refusing the City's arrestees without a warrant; that the City and Pettway entered into the MOU to create a new policy allowing the City to transport its on-sight arrestees to the county jail and to leave them there while the BPD officer obtained a warrant; that, after

16

10 days of following the MOU, Pettway telephoned the Chief of the BPD informing him that he could not lawfully enter the City's warrants and thus could not accept the City's arrestees any longer; and that Pettway has failed to take the necessary step to make his acceptance of the City's arrestees lawful (i.e., executing ALEA Form 072). This factual background evidences Pettway's ongoing refusal to accept the City's arrestees without a warrant and the inevitability of litigation on this point.

The complaint further asserts that Pettway is required by law to accept arrestees from the City for on-sight violations and misdemeanor violations of state law. The complaint accuses Pettway of refusing "to accept individuals at the Jefferson County Jail whom he is required by state law to receive." The complaint also asserts that Pettway's refusal to sign ALEA Form 072 is unlawful because execution of that form is necessary to allow him to lawfully accept the arrestees that he is required by state law to accept. The complaint therefore sets forth a justiciable controversy, namely, whether Pettway is required to accept into the county jail the City's arrestees when they are taken in for on-sight violations and misdemeanor violations of state law.

17

We note, however, that Pettway conceded at the hearing on the motion for a judgment on the pleadings that he must accept any arrestee from the City once a valid state-law warrant has been obtained for that arrestee, without regard to whether the arrestee's offense was a misdemeanor or a felony. Therefore, no controversy presently exists as to the City's allegation that Pettway refuses to accept all City arrestees taken in for misdemeanor offenses under state law; Pettway has acknowledged his obligation to accept such arrestees, as long as a warrant has been issued. Therefore, the only question in dispute is whether Pettway is required to accept arrestees from the City before a warrant has been obtained (i.e., on-sight arrestees).

We further note that Alabama law requires that a warrant be obtained within 48 hours of an on-sight arrest and mandates the release of the arrestee if a warrant is not obtained within that period.[2] Therefore, the dispute in this case is quite narrow. Even if the City loses this

---

[2]See State v. Blake, 642 So. 2d 959, 965-66 (Ala. 1994) ("If the arrest is made without a warrant, Rule 4.3(a), [Ala.] R. Crim. P., requires that the arrested person be released unless a probable cause hearing is held within 48 hours."); Rule 3.1(a), Ala. R. Crim. P. ("[U]pon a finding of probable cause made pursuant to Rule 2.4, [Ala. R. Crim. P.,] the judge or magistrate shall immediately cause to be issued an arrest warrant or a summons ….").

declaratory-judgment action, it would be required to house the individuals it arrests for violations of state law (whom it wishes to transport to the county jail) for a very short amount of time (just until the arresting BPD officer obtains a warrant).

In light of the background the complaint provides, this controversy is not merely an "'anticipated controversy,' for which '[d]eclaratory judgment proceedings will not lie.' Creola Land Dev.[, Inc. v. Bentbrooke Hous., L.L.C., 828 So. 2d [285,] 288 [(Ala. 2002)]." Baldwin Cnty. v. Bay Minette, 854 So. 2d 42, 46 (Ala. 2003). Considering the context provided, this case is distinguishable from Ex parte Marshall, 323 So. 3d 1188, and Surles v. City of Ashville, 68 So. 3d 89. Based on the foregoing, we conclude that the trial court erred in dismissing the City's complaint for lack of subject-matter jurisdiction on a finding of a lack of justiciability.

Although we conclude that the trial court's reasoning for entering the judgment on the pleadings was erroneous, we must also consider whether the judgment on the pleadings ought to be affirmed based on the alternative argument offered by Pettway, specifically, that he was entitled to a judgment as a matter of law on the merits of the City's

19

complaint.[3] See Unum Life Ins. Co. of America v. Wright, 897 So. 2d 1059, 1082 (Ala. 2004) (noting that this Court "'may affirm a trial court's judgment on "any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court."'" (citations omitted)). In light of the analysis below, we conclude that Pettway and the JCC are entitled to a judgment as a matter of law on the merits of the City's complaint.

We do not find any law requiring Pettway to accept the City's arrestees without a warrant issued by a magistrate. We also do not find any law stating that arrestees taken in by the City for violations of state law cannot be held in the City jail until a warrant is issued. The City's complaint relies on § 12-11-3, § 12-12-32, § 12-14-1, § 14-6-1, and § 14-6-5, Ala. Code 1975, but it appears that the controversy implicates only §§

---

[3]Pettway also argued in his motion for a judgment on the pleadings that he was entitled to sovereign immunity from this action pursuant to Article 1, § 14, Ala. Const. 2022. Notably, on appeal, Pettway argues that he is entitled to immunity only "to the extent the City is seeking any monetary relief." Pettway's brief, p. 33. Moreover, in Parker v. Amerson, 519 So. 2d 442, 443 (Ala. 1987), this Court held that an exception to sovereign immunity arises when an action seeks "construction of a statute under the Declaratory Judgment Act if [the official named as a defendant] is a necessary party for the construction of the statute." Therefore, Pettway is not entitled to sovereign immunity from this action.

12-12-32 and 12-14-1.[4]   Sections 12-12-32 and 12-14-1 concern the

jurisdiction of the municipal, district, and circuit courts and differentiate

between violations of a municipal code, misdemeanor violations of state

law, and felony offenses.  The parties argue that §§ 12-12-32 and 12-14-1

dictate which party bears responsibility for the City's arrestees.

On appeal, the City argues with respect to § 12-12-32 that

"the county district courts have jurisdiction over all misdemeanor prosecutions except those prosecuted by a municipality. The City does still charge, prosecute, and accept into its jail those who violate its own ordinances, fail to appear in municipal court, violate probation in municipal court, etc. However, individuals arrested by BPD officers for violations of state law misdemeanors fall within the jurisdiction of the district court and should be housed in the county jail pending criminal proceedings."

The City's brief, p. 42.  The City further argues that Rule 2.2, Ala. R.

Crim. P., "makes it clear that violations constituting misdemeanor

---

[4]At the hearing on Pettway's motion, counsel for the City told the trial court that § 12-11-3 was mistakenly cited in the complaint.  Section 14-6-1 simply provides, in pertinent part: "The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law" and may appoint a jailer "for whose acts he or she is civilly responsible."  Section 14-6-5 provides: "Any jailer or other officer who willfully refuses to receive into his custody any person lawfully committed thereto on any criminal charge or conviction must, on conviction, be fined not more than $500."

violations of state law, as distinguished from municipal ordinances, are to be heard in the county's district court. … Therefore, the county jail is the appropriate place to house those arrested by BPD officers for violations of state-law misdemeanors." Id., p. 41. Rule 2.2(b), addressing misdemeanors and ordinance violations, is based on § 12-12-32. See Committee Comments to Rule 2.2, Ala. R. Crim. P., as Amended to Conform to Rule as Amended Effective August 1, 2007.

In its complaint, the City asserted that, "[p]ursuant to Ala. Code (1975) § 12-14-1, the Jefferson County District Court has jurisdiction over misdemeanor offenses under state law committed within the police jurisdiction of the City. Venue is proper in the county where a violation of state law occurs. Ala. Code (1975) § 15-2-2." On appeal, the City argues that § 12-14-1 "contains no direction providing for a preference that a municipality take jurisdiction any time there is concurrent jurisdiction." The City's brief, p. 44.

In his motion for a judgment on the pleadings, Pettway argued that § 12-12-32 "confirms that the City has jurisdiction over the BPD arrestees and inmates under [its] municipal ordinances." He cited Rule 2.2, Ala. R. Crim. P., and § 11-1-1 of the Birmingham Municipal Code to argue

that "Pettway could not have violated [§ 12-12-32] because the City has stripped the jurisdiction of these misdemeanor offenses from Jefferson County." See § 11-1-1, Birmingham Mun. Code ("It shall be unlawful for any person to violate within the city or within the police jurisdiction thereof any law of the state, now or hereafter enacted, the violation of which is a misdemeanor or violation under the state law."). Pettway argues that, "in the City's police jurisdiction, violations of state law misdemeanors are violations of city ordinance that must be tried in municipal court." Pettway's brief, pp. 22-23. Finally, in his motion for a judgment on the pleadings, Pettway asserted that § 12-14-1

> "does not grant the City the option to pick and choose which ordinances will be applied under state law or the City's ordinances, but requires the City to effectuate arrests and prosecute the misdemeanor arrests within the City's jurisdiction. The law requires the City to be the custodian of their arrestees and inmates absent a valid state-law warrant placing the inmates within the custody of Sheriff Pettway."

In response to the motion for a judgment on the pleadings, the City argued that

> "the fatal flaw of [Pettway's] motion [wa]s that it ignore[d] the application of concurrent jurisdiction. Inherent in the concurrent jurisdiction of the courts is statutory authority that authorizes the City to charge offenses that fall within the overlapping jurisdiction under State law. Once an arrestee is charged under State law, the sheriff is obligated, as a matter

23

of law, to accept that arrestee into his care. Ala. Op. Atty. Gen. No. 88-00348. See also, Ala. Code §§ 12-12-32, 12-14-1, 14-6-1, 14-6-5[] (1975)."

The City argues that "not all violations of state law are encompassed within the City's Municipal Code as a separate ordinance. Violations of state law are often best prosecuted through the county courts, and individuals arrested for such violations should be accepted into or housed in the county jail." The City's brief, p. 44.

Finally, Alabama Attorney General Opinion No. 1988-348, which was cited in the City's complaint, states: "A sheriff is required to receive into his custody all persons who have been arrested and committed into his charge, including those who may be sick or injured." Although the City relied on this opinion below, the City did not cite any law to suggest that, once the City transports an arrestee to the county jail, that arrestee is "committed into [Pettway's] charge." Additionally, the above-quoted portion of the attorney general's opinion was written in response to the following question: "Is a sheriff required to accept a person under arrest into the county jail if that person is sick or injured?" Therefore, the opinion did not concern a sheriff's responsibility to accept arrestees from a municipality.

24

From our reading of the above-cited statutes, rules, and opinions, it appears that, when a violation of the Birmingham Municipal Code constitutes a misdemeanor offense under state law, the municipal court has jurisdiction to prosecute that offense; however, only the district and circuit courts have jurisdiction to prosecute a felony offense.[5] However, this fact does not support either sides' position. It also does not necessarily establish that Pettway is responsible for all arrestees taken in for committing a felony offense and that the City is responsible for those that have committed misdemeanors. Neither side has cited any law suggesting that the responsibility for an arrestee lies with the

---

[5]See § 12-12-32 (giving jurisdiction to municipal courts over misdemeanor prosecutions when the municipality has adopted the misdemeanor as a violation of the municipal code, and giving only district and circuit courts jurisdiction over prosecutions of felony offenses); Rule 2.2(a), Ala. R. Crim. P. ("All felony charges … shall be prosecuted in circuit court …."); and Rule 2.2(b) ("All misdemeanor offenses … shall be prosecuted originally in district court or, where adopted as municipal ordinance violations, municipal court."). This interpretation aligns with § 12-14-1(c), which gives the municipal court concurrent jurisdiction with the district court over "all acts constituting violations of state law committed within the police jurisdiction of the municipality which may be prosecuted as breaches of municipal ordinances." Also, § 12-11-30(b), Ala. Code 1975, provides that "[t]he circuit court shall have exclusive original jurisdiction of all felony prosecutions …." The City may have intended to cite § 12-11-30 instead of § 12-11-3 in its complaint. See, infra, note 4.

authority that has jurisdiction over the arrestee's prosecution, and we have not found any such law. Instead, from the Birmingham Municipal Code and the attorney general's opinions cited by the parties, it appears that the responsibility for an arrestee lies with the authority presiding over the arresting officer.

First, Alabama Attorney General Opinion No. 2002-248, which was cited below by the JCC and Pettway and was discussed at the final hearing, states:

> "Although the Sheriff has an obligation to house prisoners convicted of a felony, he or she may deny the use of his or her jail to municipal prisoners. The decision of whether to accept municipal prisoners, other than those he or she is required to house by state law, lies solely within the discretion of the sheriff, unless there is a current agreement between the sheriff, the county, and the city for the sheriff to accept municipal prisoners. …
>
> "….
>
> "Both the county commission and the sheriff should be parties to any contract with a municipality to house municipal prisoners in the county jail."

Alabama Attorney General Opinion No. 1998-78, cited by the JCC below, describes a "municipal prisoner" as a prisoner "charged with a violation of a municipal ordinance." Those opinions, although not binding authority, indicate that there is no requirement that Pettway accept the

26

City's arrestees taken in for violations of the municipal code. The parties agree that the City is responsible for such "municipal prisoners."[6]

Under § 8-4-5 of the Birmingham Municipal Code, it is clear that all of the City's arrestees taken in for violations of the municipal code (including those violations of state law that have been adopted as violations of the municipal code) must be brought to the city jail. Section 8-4-5(a) states, in pertinent part:

> "When any person is arrested, with or without a warrant, for a violation of any provisions of this Code or other city ordinance, the officer making the arrest shall forthwith bring the person before a municipal court judge or deliver him or her to the city warden, who shall detain him or her in custody until he or she can be brought before a municipal court judge to be dealt with according to law …."

More specifically, § 9-2-7 of the Birmingham Municipal Code states that "[t]he designated facility of the city for the care, custody and control of all persons <u>arrested</u>, detained or sentenced for violations of the

_____

[6]Although Alabama Attorney General Opinion No. 2002-248 states that "the Sheriff has an obligation to house prisoners <u>convicted of</u> a felony," it does not state that a sheriff is obligated to accept municipal arrestees that have committed a felony, or even those that have been charged with a felony. (Emphasis added.) Although the opinion includes the qualifier "other than those he or she is required to house by state law," the opinion does not cite any state law requiring a sheriff to house a "municipal prisoner."

27

ordinances of the city <u>and/or laws of the state</u> is the Birmingham City Jail." (Emphasis added.) Pursuant to § 9-2-7, all of the arrestees the City takes in, whether for violations of state law or of its municipal code, may be appropriately housed in the City jail.

We note that, as Pettway asserted in support of his motion for a judgment on the pleadings, there are at least three circumstances set forth in the Alabama Code in which a sheriff might accept into the county jail arrestees from the City: by agreement, when the municipal jail is overcrowded, or upon the closing of the municipal jail. Because such scenarios are specifically set forth in the law, it is logical to presume that a sheriff is not ordinarily required to accept arrestees from the City.

As stated above, the dispute in this case is quite narrow. Although it is convenient and efficient for a municipality to have an arrangement with the sheriff for the housing of state-law violators during the interim period between the arrest and the issuance of a warrant, there does not appear to be any requirement in the law that a sheriff participate in such an agreement. The City concedes that the MOU was not required by law. The City's brief, p. 27 ("[T]he MOU was one possible method of documenting Pettway's statutory obligation to accept into the county jail

28

BPD arrestees who have violated state laws."). Notably, the JCC asserted in its answer that, with this action, the City seeks to force the county to house the City's arrestees -- to circumvent the processes, which are set forth in the law, of making consensual arrangements with the county.

The City is also not entitled to a declaratory judgment stating that Pettway must execute ALEA Form 072. The City has made clear that it does not seek a judgment declaring that Pettway is required to execute ALEA Form 072 or to participate in a MOU; rather, it seeks a judgment declaring that the law requires him to complete those steps because he is statutorily responsible for arrestees taken in for violations of state law. We do not find a basis for such a judgment in the law. Pettway may have been required to execute ALEA Form 072 during the life of the MOU in order to lawfully carry out its terms; however, that question is now moot since the MOU has terminated. Moreover, although Pettway has said that he would accept arrestees from the City with a warrant, and it appears that he cannot lawfully accept those arrestees without executing ALEA Form 072, the City has not alleged that it would suffer any harm or punishment if Pettway unlawfully accepted its arrestees in violation

29

of the ALEA mandate (i.e., without signing the form) and continued to enter the City's warrants into the system using the county's "Originating Agency Identifier."  The City has alleged that that would be unlawful, but not that the City would be harmed or punished in any way, if that continued to occur.  Therefore, Pettway is entitled to a judgment as a matter of law on any claim that he was required by law to execute ALEA Form 072.

As the trial court wrote:

> "Judgment on the pleadings is proper when no issues of material fact exist and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. <u>B.K.W. Enters., Inc. v. Tractor & Equip. Co.</u>, 603 So. 2d 989, 991 (Ala. 1992)."

Here, the complaint failed as a matter of law on its merits.  Therefore, a judgment on the pleadings was appropriate.[7]

---

[7]In its judgment on the pleadings, the trial court dismissed, with prejudice, the City's complaint.  The trial court improperly dismissed the City's complaint with prejudice because it dismissed for lack of a justiciable controversy and it is well settled that "[a] dismissal for lack of subject-matter jurisdiction does not operate as an adjudication on the merits."  <u>Pontius v. State Farm Mut. Auto. Ins. Co.</u>, 915 So. 2d 557, 564 (Ala. 2005); see <u>Ex parte Capstone Dev. Corp.</u>, 779 So. 2d 1216 (Ala. 2000) (holding that a dismissal for lack of subject-matter jurisdiction is treated as a dismissal without prejudice to the plaintiff's right to reinstitute the action); <u>Stringfellow v. State Farm Life Ins. Co.</u>, 743 So. 2d 439 (Ala. 1999) (holding that insured's unripe fraud action should properly have

## Conclusion

Based on the foregoing, we affirm the trial court's judgment.

AFFIRMED.

Stewart, C.J., and Wise, Bryan, Sellers, Cook, and McCool, JJ., concur.

Shaw and Mendheim, JJ., concur in the result.

---

been dismissed without prejudice in order to allow the insured to bring the action when it presented a justiciable controversy). However, because we ultimately conclude that the judgment on the pleadings was warranted on the merits, the trial court's dismissal of the complaint with prejudice was a harmless error.